# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 4610 | **DATE** | 3/20/2003 |
| **CASE TITLE** | Filipovich vs. K & R Express Systems, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's renewed motion for judgment as a matter of law [92-1] is granted in part and denied in part. Defendant's renewed motion for judgment as a matter of law on the retaliation claim is denied. Defendant's motion for judgment as a matter of law on the age discrimination claim is granted. Defendant's renewed motion for judgment as a matter of law on the punitive damages award is denied. The Court concludes that the punitive damage award is constitutionally excessive, and adjusts that amount to $25,000.`

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

| 3 |
| number of notices |
| MAR 21 2003 |
| date docketed |
| docketing deputy initials |
| 3/20/2003 |
| date mailed notice |

Document Number

104

MD | courtroom deputy's initials

U.S. DISTRICT COURT CLERK
03 MAR 20 PM 3: 59
FILED
Date/time received in central Clerk's Office

MD | mailing deputy initials

MOMCILO FILIPOVICH,

Plaintiff,

vs.

K & R EXPRESS SYSTEMS, INC.,

Defendant.

)
)
)
)
)
)
)
)
)
)
)

No. 98 C 4610
Judge Joan H. Lefkow

**DOCKETED**
MAR 2 1 2003

## MEMORANDUM OPINION AND ORDER

After a trial in this age discrimination, retaliation and national origin discrimination case,

a jury awarded plaintiff, Momcilo Filipovich ("Filipovich"), $1,200 in back pay for his age

discrimination claim, $300 in back pay for his retaliation claim and $126,423 in punitive

damages for his retaliation claim.[1] Defendant, K & R Express Systems, Inc. ("K & R"), has now

moved under Rule 50(b), Fed. R. Civ. P., for renewed judgment as a matter of law or,

alternatively, with respect to the punitive damages, a reduction in the amount to a constitutionally

acceptable level.[2] For reasons stated below, K & R's motion is granted in part and denied in part.

Under Rule 50(b), judgment as a matter of law may be entered where "there is no legally

sufficient evidentiary basis for a reasonable jury to find for [a] party on [an] issue." *Kossman* v.

*Northeast Ill. Reg'l Commuter R.R. Corp.*, 211 F.3d 1031, 1036 (7th Cir. 2000), quoting Fed. R.

---

[1]The jury also found against Filipovich and in favor of defendant on Filipovich's national origin
discrimination claim.

[2]This motion was filed within ten days of trial and is therefore timely. *See* Fed. R. Civ. P. 50(b) ("The
movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of
judgment . . . .").

104

Civ. P. 50. After reviewing the record and drawing all reasonable inferences in the light most favorable to the non-moving party, the court must determine whether the verdict is supported by sufficient evidence. *Id.*, *Tincher* v. *Wal-Mart Stores, Inc.*, 118 F.3d 1125, 1129 (7th Cir. 1997). While the court will overturn a jury verdict only if it concludes that "no rational jury could have found for the plaintiff," *Collins* v. *Kibort*, 143 F.3d 331, 335 (7th Cir. 1998), "a mere scintilla of supporting evidence will not suffice." *Millbrook* v. *IBP, Inc.*, 280 F.3d 1169, 1173 (7th Cir. 2002), quoting *Futrell* v. *J.I. Case*, 38 F.3d 342, 356 (7th Cir. 1994).

## FACTS

The court will not provide an in-depth recitation of the factual background as this court's memorandum opinion and order denying K & R's motion for summary judgment provides extensive treatment to the relevant facts. *See Filipovich* v. *K & R Express Systems*, No. 98 C 4610, 2001 WL 687469 (N.D. Ill. June 19, 2001). The court will, however, for clarity's sake set forth some of the relevant dates necessary for an understanding of this action.

Filipovich's current law suit arises from allegations contained in an EEOC charge filed December 10, 1997, and amended on January 16, 1998.[3] The EEOC issued a Right to Sue Notice on April 27, 1998, and Filipovich filed this action on July 27, 1998.

K & R sent the following disciplinary notices to Filipovich on the dates listed: (1) a January 8, 1998 warning for attendance problems which was later retracted, and which this court apparently excluded from consideration for Filipovich's retaliation claim on a motion in limine;

---

[3]Filipovich previously filed an employment discrimination suit against K & R alleging national origin discrimination and retaliation. Magistrate Judge Arlander Keys entered summary judgment for K & R. *See Filipovic[h]* v. *K & R Express Systems, Inc.*, No. 95 C 6741, 1997 WL 790593 (N.D. Ill. Dec. 17, 1997). Judge Keys' decision was subsequently affirmed on appeal. *Filipovic[h]* v. *K & R Express Systems*, 176 F.3d 390 (7th Cir. 1999).

2

(2) a disciplinary warning letter on May 29, 1998; (3) a disciplinary warning letter on September 18, 1998; (4) a suspension letter on November 10, 1998, which suspension lasted for two days (November 17 and 18, 1998) and was subsequently affirmed on review by Filipovich's union; (5) a disciplinary warning letter on December 22, 1998 that was later retracted; (6) a disciplinary warning letter on December 31, 1998; (7) a final warning letter on August 31, 1999; (8) a suspension letter on October 26, 1999, which, although not clear, was apparently reduced from a suspension to a warning; and (9) a letter of suspension on December 15, 1999, which suspension lasted for one day (December 21, 1999). This second suspension was successfully grieved through Filipovich's union and Filipovich received full pay for the day he was not permitted to work.

## DISCUSSION

K & R argues that it is entitled to judgment as a matter of law on Filipovich's Title VII retaliation claim and age discrimination claim. K & R also asserts that it is entitled to judgment as a matter of law on Filipovich's claim for punitive damages or entitled to a reduction in the amount of such damages awarded by the jury to a constitutionally permissible level. The court will consider each argument separately.

**A.     Retaliation**

Retaliation claims under Title VII may proceed under a theory of either direct evidence of retaliation or a modified version of the familiar *McDonnell Douglas* indirect method of proof. Filipovich attempted to use the indirect method of proof. To establish a *prima facie* case of retaliation under the indirect method of proof, Filipovich was required to show (1) he engaged in a statutorily protected activity; (2) he performed his job according to his employer's legitimate

3

expectations; (3) despite meeting his employer's legitimate expectations, he suffered a materially adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity.[4] *Hilt-Dyson* v. *City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002); *Rhodes* v. *Illinois Dep't of Trans.*, – F. Supp. 2d –., 2003 WL 255231, at *8 (N.D. Ill. Feb. 5, 2003). If this *prima facie* case is satisfied, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. "If the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, [it] is entitled to summary judgment. Otherwise, there must be a trial." *Stone* v. *City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002).

K & R, in arguing for judgment as a matter of law, states (1) that no reasonable jury could find that Filipovich was subjected to "baseless" disciplinary actions following his protected conduct, and (2) even if Filipovich did rebut the basis of the disciplinary actions, no reasonable jury could find that he was the victim of retaliation following his protected conduct because no reasonable jury could have found (i) that Filipovich's November 1998 suspension was retaliatory because of the delay between the protected conduct and the suspension and because a neutral grievance committee upheld the suspension; (ii) that Filipovich suffered any adverse employment action; (iii) any causal link between Filipovich's protected conduct and the post-November 1998 disciplinary letters; and (iv) that Filipovich suffered more adverse employment actions after he engaged in protected conduct.

---

[4]Though neither party seems aware, proof of a causal connection between the statutorily protected activity and the adverse employment action in question is no longer required to establish a prima facie case in a retaliation action. *Stone* v. *City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 643-44 (7th Cir. 2002).

1.    *Whether a reasonable jury could find "baseless" disciplinary actions following Filipovich's protected conduct.*

In this court's memorandum opinion and order denying K & R's motion for summary judgment on Filipovich's retaliation claim, Filipovich argued that the following constituted adverse employment actions:

> (1) the alleged deliberate withholding of workers' compensation benefits; (2) the alleged wrongful disciplinary action taken in 1998 (specifically, the warning letters issued May 28, 1998 and September 18, 1998, the two day suspension issued November 10, 1998, and the December 31, 1998 warning letter); and (3) the alleged wrongful disciplinary action taken in 1999 (specifically, the August 31, 1999 warning letter, October 26, 1999 suspension letter later reduced to a warning letter, and the December 15, 1999 suspension).

*Filipovich*, 2001 WL 687469, at *9. The court granted summary judgment in favor of K & R on Filipovich's claim that the delay in workers' compensation was retaliatory, but as to the 1998 and 1999 disciplinary actions stated,

> The disciplinary actions, however, cannot be as easily dismissed. First, even if this court were to accept that any single disciplinary action did not constitute an adverse employment action, the amount of discipline, and the fact that plaintiff was suspended, certainly qualify as materially more disruptive than a mere inconvenience. Second, a genuine fact dispute exists regarding whether this discipline was justified. If, indeed, K & R repeatedly wrongfully disciplined plaintiff, this would militate against a finding that no causal connection exists even though the first incident occurred approximately five months after plaintiff's EEOC filing and one month before he filed this lawsuit.

*Id.* at 10.

K & R now argues that no reasonable jury could have found that any of the disciplinary letters issued to Filipovich were groundless. Both parties are less than clear as to the contours of

this argument.[5] K & R appears to be making a pretext argument, *i.e.*, that it had a legitimate non-discriminatory reason for taking the actions and that Filipovich did not prove by a preponderance of the evidence that these legitimate reasons were not K & R's true reasons but were instead a pretext for discrimination. If insufficient evidence was brought forth to show that the disciplinary letters were in fact groundless, K & R would have legitimate reasons for the actions not related to retaliation (that Filipovich in fact did perform the acts that formed the basis for the discipline).

The Seventh Circuit recently addressed the applicability of the *McDonnell Douglas* burden shifting approach to Rule 50 motions in employment discrimination cases. In *Millbrook* v. *IBP, Inc.*, 280 F.3d 1169 (7th Cir. 2002), the court noted that

> once a trial is complete and judgment rendered, the burden-shifting framework of *McDonnell Douglas* falls away: "Post-trial we consider only whether the record supports the resolution of the ultimate question of intentional discrimination." *Collins*, 143 F.3d at 335. Accordingly, the appropriate question on appeal is not whether IBP's proffered reason for rejecting Millbrook's application was pretextual, but rather whether sufficient evidence supports the jury's finding that IBP discriminated against Millbrook because he is black. *Reeves* v. *Sanderson Plumbing Products*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) ("The ultimate question is whether the employer intentionally discriminated . . .").

*Millbrook*, 280 F.3d at 1174. The court, however, did not deem the question of pretext totally irrelevant in post-trial motions. Instead, the court quoted *Reeves* in noting that "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.*, quoting *Reeves*, 530 U.S. at 148.

---

[5]K & R confuses this argument a great deal in its opening brief, as it appears to believe this argument is relevant to Filipovich's *prima facie* case. In its reply brief K & R correctly notes that this argument goes more to pretext.

The question the court must consider is whether a reasonable jury could have found that K & R's asserted justifications were false and, therefore, pretextual. If a jury could have found the justifications false, then Filipovich would appear to have sufficient evidence beyond his *prima facie* case to support his jury verdict. If not, no evidence of intentional retaliation would be present because K & R would have been justified in its discipline. Moreover, evidence simply showing that K & R's justifications were objectively false is not enough. The evidence must show subjectively that K & R did not believe its proffered reason for the adverse action. *See, e.g., Essex* v. *United Parcel Serv.*, 111 F.3d 1304, 1310 (7th Cir. 1997) ("In examining pretext, the question is whether the employer honestly believed its proffered reason for [the adverse action]. The fact that the employer was mistaken or based its decision on bad policy, or even just plain stupidity, goes nowhere as evidence that the proffered explanation is pretextual.")

As K & R points out, Filipovich's only attempt to address the merits of the disciplinary letters on direct examination at trial was as follows:

> Q.    Now the various mistakes that have been alleged in these letters, did you commit them?
> A.    No Sir.

(Filipovich direct at 50.) K & R argues that no reasonable jury could have found the letters to be groundless based simply on this testimony.

In response, Filipovich first attempts to turn this analysis on its head by claiming that K & R "did not offer a shred of testimony or other evidence from any witness to establish that Mr. Filipovich had in fact committed the offenses set forth in the letters." (Filipovich Resp. at 3.) Filipovich then argues more broadly that other evidence is present by which the jury could have concluded that the letters were baseless and that K & R's reasons were pretextual and showed a

retaliatory motive. Without citing to the record, Filipovich lists a sampling of the evidence he relies on, including that (1) K & R's employees and former employees admitted at trial that K & R failed to follow its own disciplinary policies in issuing the disciplinary letters to Filipovich; (2) Filipovich was a good to excellent worker prior to filing his EEOC charge of discrimination; (3) K & R issued Filipovich disciplinary letters that followed shortly after his EEOC charge was filed, but K & R retracted these letters in an attempt to persuade the EEOC that K & R was not discriminating against Filipovich; (4) almost immediately after the EEOC concluded its investigation, K & R issued Filipovich another disciplinary letter; (5) all the decision-makers involved in issuing the disciplinary letters possessed knowledge of Filipovich's EEOC filing and law suit; (6) during the time period immediately preceding Filipovich's filing of the EEOC charge he had been issued one disciplinary letter for mishandling freight compared to the nine he received after he filed his charge; and (7) prior to filing his EEOC charge Filipovich was never suspended compared to being suspended twice after filing his EEOC charge.

K & R attacks much of this evidence. For example, with respect to (1) above, K & R states that the differential treatment from other dockmen goes only to Filipovich's national origin claim, and cites to this court's memorandum opinion and order on summary judgment in support. Nowhere in that opinion, however, does the court say that this evidence is *only* relevant to the national origin claim as K & R suggests.

K & R argues, with respect to (3) and (4) above dealing with the disciplinary letters, that one such letter sent on January 8, 1998 for absenteeism, shortly after the EEOC charge, was already ruled irrelevant by this court on a motion in limine. Moreover, K & R argues that the May 28, 1998 letter followed the EEOC charge by five months, thus being too remote in time.

K & R also questions the relevance of Filipovich's claim that this letter was sent almost immediately after the EEOC concluded its investigation because it was the EEOC charge, and not the investigation, that was Filipovich's protected conduct. This argument, however, lacks persuasive force as Filipovich's claim is that the disciplinary letters were either revoked or sent in conspicuous timing with the EEOC investigation. According to Filipovich, this letter was sent after the EEOC investigation (and not earlier) so as to not influence the investigation. Finally, K & R attacks (5) above by arguing that no evidence was presented that decision-makers involved in the letters and suspension knew that Filipovich engaged in protected conduct.

K & R also presents evidence suggesting that Filipovich did, in fact, commit the actions that resulted in the disciplinary charges and ultimately the suspensions, most of which comes from K & R's cross examination of Filipovich. The court will consider such evidence by examining each letter.

## May 28, 1998 letter

This letter warned Filipovich that he allegedly was assigned to load and ship freight to a client, W.W. Grainger, in Kansas City, Missouri, but he loaded this freight and incorrectly shipped it to W.W. Grainger's facility in Niles, Illinois. On cross, Filipovich admitted that when W.W. Grainger returned the freight after it had been sent to Niles, it had shipping labels directing it to Kansas City. (Filipovich cross at 57-58.) Filipovich's explanation was that someone put the "Kansas City" labels on the freight at W.W. Grainger's facility in Niles and subsequently returned the freight to K & R.[6] (Filipovich cross at 64.)

---

[6]Filipovich provided more elaboration in his deposition, stating

(continued...)

**September 18, 1998 letter**

This letter warned Filipovich that he allegedly unloaded a trailer and improperly left 39 pieces of a 460-piece shipment of freight on the trailer. When asked on cross for an explanation as to why the letter said that 39 cartons were left onboard the trailer, not all 460, Filipovich's explanation was that "[t]his is very, very fine example for retaliation of my filing complaint with federal court in Chicago after July 27th, 1998." (Filipovich cross at 84.) Filipovich later described the letter as follows: "This is totally false letter with not any grounds sir."[7] (Filipovich cross at 85.)

**November 10, 1998 letter of suspension**

This letter alleged that Filipovich had left two pieces of freight on the dock that he said he had loaded. This letter suspended Filipovich on November 17 and 18, 1998. Filipovich admitted that he documented on his manifest that all pieces of the shipment had been loaded. (Filipovich cross at 88-89.) Filipovich further admitted on cross that he did not designate any of the freight

---

[6](...continued)
What I believe--this is my assumption. What I believe, when that particular freight came in facility of W.W. Grainger Niles, whoever handle find out they did not order it at that time that freight. Probably they contact shipper or whom, and after conversation they change it, they said that particular freight is belong to Kansas City, W.W. Grainger Kansas City, Missouri. And person who handle that conversation probably wrote that note by hand, or realize if they have that label why person going to write by hand. And I assume that label was not on freight when they get facility on W.W. Grainger Niles.

(Filipovich dep. at 188.)

[7]In his deposition, Filipovich described the circumstances surrounding the letter as follows:

Q: So, how do you explain of the 460 only 421 went to Michigan and the other 39 went to St. Louis?

A: I do not have any clue about that.

(Filipovich dep. at 196.)

as missing (Filipovich cross at 95) and did not see anyone remove the freight from the trailer he loaded. (Filipovich cross at 98-99.) Filipovich's union upheld this his suspension "based on the facts and evidence presented." (K & R Ex. 20, item #34.)

**December 31, 1998 warning letter**

This warning letter stated that Filipovich had left one piece of a 15-piece shipment on the dock at K & R's terminal. On cross, Filipovich admitted that on his manifest he wrote that he loaded all 15-pieces. (Filipovich cross at 126.) Filipovich also admitted that the manifest did not show any other dockmen on the trailer after him. (*Id.*) Filipovich further admitted that he did not see anyone remove any freight from the trailer. (Filipovich cross at 129.) Finally, Filipovich admitted that a K & R document (K & R exhibit 12) stated that one piece was missing when the freight arrived at its destination and that the freight was found in the "OS&D," which apparently was located in Hinsdale. (Filipovich cross at 134.) In response to this document Filipovich gave the following testimony on cross:

> Q: Sir, what I'm saying is, is that a Cinncinnati terminal–
> A: That document is maybe falsified.
> Q: I'm sorry sir, my question is: Does this record reflect that when the trailer arrived in Cinncinnati, it was one piece short of that particular pro number?
> A: I see that from that document.
> Q: Okay. Do you have any reason to believe that document was made up or false?
> A. Absolutely.
> Q: Who made it up? Who made it false, sir?
> A: KR management.
> Q: Who in K&R management sir?
> A: I don't know. I don't know. [remainder of answer stricken by court.]

(Filipovich cross at 133.)

**August 31, 1999 final warning letter**

This letter warned Filipovich that he allegedly improperly secured freight in a trailer that resulted in damage to the freight. Filipovich admitted on cross that he loaded the freight and did not designate it as damaged. (Filipovich cross at 140.) Filipovich also admitted that he himself sealed the trailer in question. (Filipovich cross at 141.) Filipovich commented on the damage to the freight on cross as follows:

> Q. I'm sorry sir. Do you deny that freight was damaged when it arrived in Kansas City?
> A. I got no idea about it.
> Q. You have no evidence one way or the other, do you?
> A. No, sir. They claim in a letter.

(Filipovich cross at 142.)

**October 26, 1999 suspension letter**

In this letter, K & R found Filipovich responsible for leaving freight on the dock. Filipovich admitted that he loaded the freight. (Filipovich cross at 153.) Filipovich did not recall seeing anybody remove any freight. (Filipovich cross at 156.) K & R's Kansas City terminal reported that the freight was not on board when the trailer arrived. (K & R ex. 24 at 07494.) K & R subsequently found the missing freight at its Hinsdale terminal. (*Id.*)

**December 15, 1999 letter of suspension**

This letter alleged that Filipovich was responsible for improperly indicating that he did not unload items of freight which he did unload and misdirected to the wrong destination. Filipovich testified that he did not circle the freight on his shipping manifest because his shift ended before he got to it. (Filipovich cross at 165.) On cross, however, Filipovich stated that his weekday shift started at 3 p.m. and ended at 11 p.m. (Filipovich cross at 165-66.) The trailer was

12

completely unloaded by 1:30 p.m. on December 3, 1999. (Filipovich ex. 16.) Filipovich testified that the trailer was unloaded on a Saturday, when his shift ended at 1:30. (Filipovich cross at 166-67.) The court, however, took judicial notice that December 3, 1999 was a Friday. (Filipovich cross at 166.)

After completing a review of all this evidence, the court concludes that sufficient evidence existed to support the jury's verdict. Based on all of the evidence, a reasonable jury could have found that the disciplinary letters were groundless and that K & R believed them to be so. A certain amount of this evidence certainly stands on the jury's own impressions of Filipovich's credibility. Filipovich staunchly maintained throughout that he did not commit any of the actions that formed the basis of his discipline. Also, while K & R relies heavily on its cross of Filipovich to show that sufficient evidence did not exist, the jury was obviously persuaded by Filipovich's slant of the events. Moreover, while the burden of proof remained with Filipovich, the preponderance of the evidence is not a high threshold, and the lack of definite evidence from K & R that these infractions did take place and were the fault of Filipovich allowed the jury sufficient evidence, based on what was presented, to conclude that these infractions never took place.

As for K & R's claim that no sufficient evidence was present to show that it subjectively believed the disciplinary actions to be baseless, the court disagrees. As Filipovich points out, the jury heard testimony that K & R attempted to influence the EEOC investigation, including issuing a disciplinary letter shortly after the EEOC completed its investigation. The jury also heard testimony that Filipovich was an excellent worker who, in the two-year time period preceding the EEOC charge, had received only one disciplinary letter and was never once

suspended, compared with nine disciplinary letters and two suspensions after the EEOC charge. Although a reasonable jury could have gone the other way, Filipovich met his burden to present more than a mere scintilla of evidence. That K & R does not like the jury's ultimate conclusions does not make those determinations unreasonable.

2.    *Whether a reasonable jury could find that Filipovich was the victim of retaliation following his protected conduct.*

K & R next argues that assuming Filipovich did rebut the basis of the disciplinary actions, no reasonable jury could have found that he was the victim of retaliation following his protected conduct for four reasons. The court will address each in turn.

i.    *Delay between the protected conduct and the suspension and a neutral grievance committee upholding the suspension*

K & R argues that a reasonable jury could not have found Filipovich's November 1998 suspension retaliatory because of the delay between his protected conduct and the suspension and because a neutral grievance committee upheld the suspension. Initially, the court notes that the persuasiveness of this argument depends on an assumption that the suspension was the only adverse employment action. As discussed more fully below, this is not the case. The court will, however, address K & R's argument concerning delay and a neutral grievance committee.

K & R states that the November 1998 suspension followed Filipovich's EEOC charge by almost 11 months and his law suit by five months. K & R asserts that given this time lapse, no reasonable jury could find Filipovich's suspension retaliatory. In response, Filipovich argues that groundless disciplinary actions were taken against him in conspicuous timing with the EEOC investigation, with one disciplinary letter being issued shortly after the EEOC completed its investigation. Moreover, Filipovich explains any such time lapse by pointing to evidence he

presented showing that K & R's disciplinary policy required disciplinary letters to first be issued before K & R was in a position to suspend Filipovich.

K & R attempts to refute Filipovich by pointing to *Oest* v. *Illinois Dep't of Corrs.*, 240 F.3d 605, 613 (7th Cir. 2001). In *Oest*, the plaintiff received several written reprimands under a progressive discipline system. *Id.* K & R relies on *Oest* for the proposition that Filipovich's disciplinary letters could not be viewed as leading up to his suspension and otherwise explain any time delay. The court, however, explicitly noted in *Oest* that "even if the negative performance evaluations or reprimands cannot, standing alone, state a claim of discrimination, they can constitute relevant evidence of discrimination with respect to other employment actions that clearly are adverse under the statute." *Oest*, 240 F.3d at 613.

Without yet reaching the issue as to whether the disciplinary actions themselves were adverse employment actions, Filipovich attempts to rely on the disciplinary letters to constitute evidence leading up to his suspension. Sufficient evidence existed for a reasonable jury to conclude that any time delay between the EEOC charge and the suspension was the result of K & R's issuing the necessary threshold disciplinary letters. Finally, as stated above, this result assumes that only the suspension is an adverse employment action. As such, the court rejects K & R's claim that the delay between Filipovich's protected conduct and suspension was too attenuated.

Moving on to K & R's claim that no reasonable jury could have found retaliation because Filipovich's suspension was affirmed by his union, the court disagrees. K & R relies on the Seventh Circuit's decision in Filipovich's first case, in which the court stated "in light of the arbitrator's finding that K & R had 'just cause for taking disciplinary action' against him, we are

of the opinion that Filipovic[h] has failed to make a *prima facie* case of retaliation."

*Filipovic[h]* v. *K & R Express Systems, Inc.*, 176 F.3d 390, 399 (7th Cir. 1999). Specifically, the

court found that this arbitrator's ruling barred Filipovich from establishing his *prima facie* case

because there was no evidence of a causal link between his statutorily protected conduct and his

subsequent termination. *Id.* at 399. Since this case was decided, however, the Seventh Circuit

has clarified the contours of the *prima facie* case in retaliation cases. In *Stone* v. *City of*

*Indianapolis Pub. Utils. Div.*, 281 F.3d 640 (7th Cir. 2002), the court stated in no uncertain terms

that evidence of such a "casual connection" is no longer part of a plaintiff's *prima facie* case in

retaliation cases. *Id.* at 642-44. As the court noted, if such a causal link were required under an

indirect method of proof formula, it would in fact be requiring a plaintiff to have direct evidence

of retaliation. *Id.* at 643-44. Instead, the court clarified that the indirect method of proof in

retaliation cases

> requires the plaintiff to show that after filing the charge only he, and not any
> similarly situated employee who did not file a charge, was subjected to an adverse
> employment action even though he was performing his job in a satisfactory
> manner. If the defendant presents no evidence in response, the plaintiff is entitled
> to summary judgment. If the defendant presents unrebutted evidence of a
> noninvidious reason for the adverse action, he is entitled to summary judgment.
> Otherwise there must be a trial.

*Stone*, 281 F.3d at 644. As stated above, the court believes that sufficient evidence was present

for a reasonable jury to disbelieve K & R's noninvidious reason for discrimination. This decision

by the union was evidence that was (or should have been) brought to the trier of fact's attention,

and does not sway the court from its view that a reasonable jury could have found that Filipovich

was discriminated against. Such evidence does not serve to negate Filipovich's *prima facie* case.

Thus, the court rejects this argument also.

## ii.    *Adverse employment action*

K & R next argues that, absent the November 1998 suspension, no reasonable jury could find that Filipovich suffered any adverse employment action. K & R bases this argument on its assumption that the court would conclude that Filipovich's 1998 suspension was not retaliatory, and then argues that the disciplinary letters are not adverse employment actions. In support, K & R cites to a Fifth Circuit case which apparently construes the term "adverse employment action" far more narrowly in retaliation cases. *Mattern* v. *Eastman Kodak Co.*, 104 F.3d 702, 708-09 (5th Cir. 1997).

Initially, the court notes that the Seventh Circuit's precedent does not endorse a restrictive view of adverse employment actions in retaliation cases, if such a requirement is in fact still necessary at all. *See, e.g., Herrnreiter* v. *Chicago Housing Auth.*, 315 F.3d 742, 745 (7th Cir. 2002) ("We do not mean to suggest by such citations that retaliation, to be actionable under Title VII (or other statutes), has to involve an adverse employment action. It does not."); *McDonnell* v. *Cisneros*, 84 F.3d 256, 259 (7th Cir. 1996) ("The provision regarding retaliation may intentionally be broader, since it is obvious that effective retaliation against employment discrimination need not take the form of a job action."). In dicta, the Seventh Circuit has also implied that a broader definition of an employment action may be justified in retaliation cases. *See Herrnreiter*, 315 F.3d at 746 (implying that the answer is no to the question, "But what if retaliation *does* take the form of an employment action: must that action be as severe as would be required if the action were charged as discrimination rather than as retaliation?") (emphasis in original).

Nonetheless, under even a narrow reading of adverse employment action, the court is not convinced that the repeated disciplinary actions taken against Filipovich would not constitute adverse employment actions. In this court's memorandum opinion and order denying summary judgment, it defined adverse employment action as follows

> An adverse employment action is a materially adverse change in the terms and conditions of employment that is more disruptive than a mere inconvenience or an alternation of job responsibilities. Adverse employment actions encompass more than simply the termination of employment or a decrease in salary. They also may include actions such as bestowing on an employee a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation. It is well established that conditions of employment that are designed to harass and humiliate employees because of their race are actionable adverse employment actions under Title VII.

*Stockett* v. *Muncie Indiana Transit Sys.*, 221 F.3d 997, 1001 (7th Cir. 2000) (citations, internal quotation marks, and alterations omitted). As stated in the summary judgment opinion, "even if this court were to accept that any one single disciplinary action did not constitute an adverse employment action, the amount of discipline, and the fact that plaintiff was suspended, certainly qualify as materially more disruptive than a mere inconvenience." *Filipovich*, 2001 WL 687468, at *10. The jury had sufficient evidence to find that these disciplinary actions were designed to harass and humiliate Filipovich, a conclusion the jury obviously reached.

In response, K & R cites three Seventh Circuit cases in which disciplinary letters and warnings did not amount to adverse employment actions. In *Horwitz* v. *Board of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 613-14 (7th Cir. 2001), the court concluded that only the plaintiff's termination, and not three remedial warnings about her behavior, constituted adverse employment actions. The court, however, devoted its analysis to the issue of causal connection,

and the only statement concerning these warnings was that plaintiff was "unable to label certain events as adverse employment actions and tie them to the protected activities in light of the fact that we have found her termination is the only adverse employment action that she has suffered." *Id.* Nothing in this case suggests a sweeping determination as a matter of law that disciplinary warnings always fail to reach the adverse employment action standard. K & R's reliance on *Hoffman-Dowbroski* v. *Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 654 (7th Cir. 2001), is also not persuasive. In that case, the court found that one warning, combined with other activities, did not constitute an adverse employment action. *Id.*

Finally, K & R points to *Kersting* v. *Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118-19 (7th Cir. 2001). In *Kersting*, the court concluded that two warnings issued to the plaintiff did not constitute adverse employment actions. *Id.* The court, however, specifically noted that there was no indication that Kersting received the warnings because of his discrimination claim and were not accompanied by tangible job consequences. Here, the issue of whether the warnings were issued because of the EEOC charge was presented for the jury to decide, and it believed so. Moreover, these disciplinary letters were accompanied by tangible job consequences, as Filipovich was suspended twice, and both times the disciplinary letters were required intermediate steps to reach the suspension plateau. Based on all of the foregoing, the court concludes that a reasonable jury could have found that adverse employment actions took place and denies K & R's motion on this ground.

  *iii.*  *Causal link between Filipovich's protected conduct and the post-November 1998*
    *disciplinary letters.*

  K & R next argues that no reasonable jury could have found any causal link between

Filipovich's protected conduct and the post-November 1998 disciplinary letters. K & R breaks

this argument into two parts. First, K & R attacks the disciplinary letters after the November

1998 suspension. Filipovich argues that there was a year-long gap between Filipovich's EEOC

charge and the warning letters leading up to the December 1999 suspension that was reversed

after grievance. K & R relies on the Seventh Circuit's opinion in Filipovich's first case, where

the court remarked that "[a] substantial time lapse between the protected activity and the adverse

action is counter-evidence of any causal connection." *Filipovic[h]*, 176 F.3d at 399. While the

court did note that such a gap would be "counter-evidence" of a causal connection, such "counter-

evidence" was presented to the jury and disbelieved based on other sufficient evidence. For the

reasons this court has articulated throughout this opinion, a reasonable jury in this case could have

concluded that such a connection existed based on this case's facts and circumstances.

  Next, K & R argues that because no evidence was presented that anyone involved in

issuing the letters received in 1999 knew that Filipovich had engaged in protected conduct, no

reasonable jury could find that these disciplinary letters were in retaliation for protected conduct.

According to K & R, starting with the June 1999 letter, all grievance proceedings and disciplinary

actions were handled by new staff. Filipovich, however, presents three persuasive reasons why

this argument lacks merit. First, K & R personnel had notice that Filipovich had filed EEOC

charges and such notice cannot be disavowed at this stage of the litigation by claiming a change in

personnel. Moreover, K & R's president Larry Klong admitted that he maintained ultimate

oversight and monitoring responsibility with respect to the disciplinary process. It is undisputed that Klong had knowledge of the EEOC charge and law suit. Finally, even if a distinction could be made for the disciplinary letters after June 1999, this issue was not bifurcated for the jury and its decision could have easily rested on the multiple adverse employment actions that pre-dated June 1999. This argument is also rejected.

> iv.  *Reasonable jury could find that Filipovich suffered more adverse employment actions after he engaged in protected conduct.*

K & R next argues that no reasonable jury could have found for Filipovich on his retaliation claim because he suffered fewer adverse employment actions after he engaged in protected conduct. K & R points to Filipovich's testimony that he received 54 disciplinary letters from April 1984 to October 1994. K & R maintains it is entitled to judgment as a matter of law because Filipovich was disciplined less after his EEOC filing. The court disagrees. As Filipovich points out, evidence was presented that from April 1995 until Filipovich filed his charge in December 1997, he received only one disciplinary letter. After he filed his EEOC charge, Filipovich received nine letters and two suspensions. This was sufficient evidence for a reasonable jury to determine that Filipovich had been retaliated against. As such, this argument is denied.

**B.  Age Discrimination**

K & R argues that judgment as a matter of law is appropriate in its favor on the age discrimination claim because Filipovich did not show at trial that he is similarly situated to other dockmen who qualified for the position of "spotter" from November 1997 to June 1, 1999. K & R presents this argument in two scenarios. According to K & R, if Filipovich's claim is that

he was qualified to be a spotter, he had to show he had the same qualifications as the three men who became spotters. If Filipovich's claim is that he was denied the ability to train as a spotter, he was required to show younger dockmen who did train. K & R asserts that Filipovich did neither, as there was no evidence of the qualifications he possessed for the spotter position or the qualifications of other employees during the relevant period. K & R also argues that no evidence was brought forth to show that the three comparable employees underwent training.

Filipovich clarifies that his claim is for the inability to train as a spotter. In response to K & R's argument that nothing in the record shows that the three comparables underwent spotter training, Filipovich points out that K & R's personnel testified at trial that all spotter candidates were required to train as spotters and/or to take a qualifying test, and that K & R denied Filipovich the opportunity to train as a spotter as well as the chance to take the qualifying test for spotters.

Based on the court's review of the evidence, K & R is entitled to judgment as a matter of law on the age discrimination claim. Filipovich did not present evidence that he was similarly situated with other dockmen who became spotters. Filipovich's argument that he was denied the opportunity to train as a spotter also fails as a matter of law because, as the testimony provided, the comparable dockmen also did not get the opportunity to train for the position. Filipovich needed to show a similarly situated younger individual who either received the position or received the ability to train. No such evidence was presented, and the court grants K & R judgment as a matter of law on this claim.

## C.     Punitive Damages

For two reasons, K & R argues that judgment as a matter of law should be entered on the punitive damages claim or that the court should reduce the amount of punitive damages. First, K & R argues that no reasonable jury could have awarded Filipovich punitive damages on his retaliation claim because Filipovich failed to prove retaliation "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1).  K & R also argues that the amount of punitive damages awarded is unconstitutional because it violates Due Process.  *See Cooper Indus., Inc.* v. *Leatherman Tool Group, Inc.*, 532 U.S. 424, 433-34 (2001); *BMW of N. Am., Inc.* v. *Gore*, 517 U.S. 559, 562 (1996).

With respect to whether a reasonable jury could have awarded punitive damages, the Supreme Court has developed a three-part framework for determining whether a Title VII plaintiff is entitled to punitive damages. *Kolstad* v. *American Dental Ass'n*, 527 U.S. 526, 536-45 (1999); *Bruso* v. *United Airlines, Inc.*, 239 F.3d 848, 857-60 (7th Cir. 2001).  First, a plaintiff must demonstrate that the employer acted with the requisite mental state, *i.e.*, that the employer acted "in the face of a perceived risk that its actions will violate federal law." *Kolstad*, 527 U.S. at 536; *Bruso*, 239 F.3d at 857.  This first factor may be satisfied by establishing that the employer "acted with reckless disregard of [the plaintiff's] federally protected rights . . . ." *Bruso*, 239 F.3d at 858.  Once a plaintiff establishes that the employer (or its employees) acted in reckless disregard of a plaintiff's federally protected rights, the plaintiff must demonstrate a basis for imputing liability to the employer. *Kolstad*, 527 U.S. at 539; *Bruso*, 239 F.3d at 858.  This may be accomplished by showing "the employees who discriminated against [the plaintiff] are

managerial agents acting within the scope of their employment." *Bruso*, 239 F.3d at 858, citing *Kolstad*, 527 U.S. at 539. Finally, even if the plaintiff establishes that the employer's managerial agents recklessly disregarded federally protected rights, the employer "may avoid liability for punitive damages if it can show that it engaged in good faith efforts to implement an antidiscrimination policy." *Bruso*, 239 F.3d at 858, citing *Kolstad*, 527 U.S. at 539.

Sufficient evidence may support the first element – that the employer acted in reckless disregard of a plaintiff's federally protected rights – in a variety of different ways. The Supreme Court clarified that for this element to be satisfied, "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." *Kolstad*, 527 U.S. at 536. Thus, the Court remarked that this factor would not be satisfied when the employer was unaware of the federal prohibition or acted with the distinct belief that its discrimination was lawful. *Id.* The Seventh Circuit has remarked that this factor is satisfied where "the relevant individuals knew of or were familiar with the antidiscrimination laws and the employer's policies for implementing those laws." *Bruso*, 239 F.3d at 858. Sufficient evidence has been presented that the K & R decision makers were aware of the legal requirement that an employer may not retaliate against an employee for exercising statutorily protected rights. Any suggestion otherwise would appear frivolous, as Filipovich himself had previously brought a retaliation suit against K & R.

The second element is also easily satisfied. A reasonable jury could have found, based on the evidence at trial, that the discrimination against Filipovich was from managerial agents acting within the scope of their employment.

Finally, sufficient evidence exists for the jury's determination that K & R did not make good faith efforts to comply with the law. Evidence was presented that Filipovich was a good to excellent worker during the time period, yet he received these disciplinary warnings. Evidence was also presented that K & R failed to document (or preserve) any investigation it took into Filipovich. Finally, evidence was presented that K & R had done nothing to train supervisory personnel on how to comply with federal employment law. Such evidence may have allowed the jury to conclude that K & R had made no good faith effort to comply with federal anti-discrimination laws. *See, e.g.*, *Mathis* v. *Phillips Chevrolet, Inc.*, 269 F.3d 771, 778 (7th Cir. 2001) ("leaving managers . . . in ignorance of the basic features of the discrimination laws is an 'extraordinary mistake' for a company to make, and a jury can find that such an extraordinary mistake amounts to reckless indifference."); *EEOC* v. *Mid-Continent Sec. Agency, Inc.*, No. 99 C 5381, 2001 WL 800089, at *4 (N.D. Ill. July 12, 2001) ("But in this case, the evidence reflected that Mid-Continent had done nothing whatsoever to train supervisory personnel in how to comply with the law. The jury properly could have concluded that the company had not engaged in a 'good faith effort' to comply with the ADA's requirements.").

K & R also argues that the punitive damage award of $126,423 is unconstitutional. Both the Eighth Amendment and the Due Process Clause prohibit "grossly excessive" punishments on tortfeasors. *See Cooper Indus., Inc.*, 532 U.S. at 433-34. In *Gore*, the Supreme Court established three "guideposts" to determine whether punitive damages are excessive: (i) the degree of reprehensibility of the improper conduct; (ii) the disparity between the harm or potential harm suffered by the plaintiff and the punitive damage award; and (iii) the difference between the

punitive damages and the civil penalties authorized or imposed in comparable cases. 517 U.S. at 574-75.

Before analyzing the factors, the court must clarify the contours of K & R's argument. K & R does not seek a remittitur of damages or a new trial under Rule 59, Fed. R. Civ. P. Instead, K & R seeks either judgment as a matter of law or reduction of the punitive damages because the amount is excessive and, therefore, unconstitutional. Although this court has found no Seventh Circuit case law elaborating on this point, the court agrees with the Eleventh Circuit, which has stated,

> A constitutionally reduced verdict . . . is really not a remittitur at all. A remittitur is a substitution of the court's judgment for that of the jury regarding the appropriate award of damages. The court orders a remittitur when it believes the jury's award is *unreasonable* on the facts. A constitutional reduction, on the other hand, is a determination that the law does not permit the award. Unlike the remittitur, which is discretionary with the court . . . a court has a mandatory duty to correct an unconstitutionally excessive verdict so that it conforms to the requirements of the due process clause.

*Johansen* v. *Combustion Eng'g, Inc.*, 170 F.3d 1320, 1331 (11th Cir. 1999) (emphasis in original). *See also Ross* v. *Kansas City Power & Light Co.*, 293 F.3d 1041, 1049-50 (8th Cir. 2001) ("the action the district court took was not actually a remittitur, but instead was simply a reduction of the excessive punitive damages award in conformity with constitutional limits . . . . While the traditional remedy of remittitur does require the plaintiff's consent in order to comport with the Seventh Amendment right to jury trial . . . the court's mandatory review of a punitive damages award does not implicate the Seventh Amendment."); *Leatherman Tool Group, Inc.* v. *Cooper Indus., Inc.*, 285 F.3d 1146, 1151 (9th Cir. 2002); *Tronzo* v. *Biomet, Inc.*, 236 F.3d 1342, 1351-52 (Fed. Cir. 2001). Thus, as the court in *Johansen* concluded, "upon

determination of the constitutional limit on a particular award, the district court may enter judgment for that amount as a matter of law." *Johansen*, 170 F.3d at 1331.

The foregoing analysis affects this case in two ways. First, the court does not judge whether the verdict is unreasonable based on the facts, but instead examines whether it is constitutionally excessive and, if so, will adjust it to the maximum amount permitted by the Constitution. Moreover, determining whether the award meets constitutional bounds is a question of law for the court, not a jury. *See Johansen*, 170 F.3d at 1331; *Ross*, 293 F.3d at 1049-50. With respect to a remittitur under Rule 59, a trial court is required to present the plaintiff with the option of a reduction of damages or a new trial because damages is a factual question for which a plaintiff is constitutionally entitled to have a jury. *See, e.g., Haluschak* v. *Dodge City of Wauwatosa*, 909 F.3d 254, 256-57 (7th Cir. 1990). Because the court is only striking any portion of the punitive damages that is constitutionally excessive, it is appropriate for the court to enter judgment on this new amount and Filipovich's right to have a jury decide his punitive damage claim are not implicated. *Johansen*, 170 F.3d at 1331; *Ross*, 293 F.3d at 1049-50.

Moving on to the constitutional analysis, the first guidepost under *Gore* is the reprehensibility of the improper conduct. In *Gore*, the court listed a number of "reprehensibility" factors, including deliberate false statements, acts of affirmative misconduct, concealment of evidence of improper motive, and repetition of tortious conduct. *Gore*, 517 U.S. at 576. Here, based on the jury's conclusions, there is a degree of reprehensibility to K & R's conduct, as the jury concluded that it retaliated against Filipovich for exercising statutorily protected rights. As such, there was sufficient evidence of an improper motive and repetition of

tortious conduct. Any such reprehensibility, however, is not on par with some of the other actions described in *Gore*, such as threats of violence or reckless disregard for Filipovich's health or safety. *Id.* at 576-77. Moreover, as K & R points out, the harm at issue was not psychological or physical in nature. Finally, K & R's conduct as found by the jury, although unquestionably illegal, does not appear to be among the most reprehensible or egregious retaliatory actions a company could take against an employee, as Filipovich was not terminated. Thus, based on this first guidepost, the punitive damage award in this case does seem excessive.

Under the second guidepost, the disparity between the harm or potential harm suffered by the plaintiff and the punitive damage award, the Supreme Court in *Gore* made sure to point out that no "mathematical bright line" test exists to establish whether an award was impermissibly excessive. *Id.* at 582. The closest the court came to setting a ceiling, however, was its observation that "[w]hen a ratio is a breathtaking 500 to 1 . . . the award must surely 'raise a suspicious judicial eyebrow.'" *Id.* at 583, quoting *TXO Prod. Corp.* v. *Alliance Res. Corp.*, 509 U.S. 443 (1993). The court also remarked that "a punitive damages award of 'more than 4 times the amount of compensatory damages' might be 'close to the line . . . .'" *Id.* at 581, quoting *Pacific Mut. Life Ins. Co.* v. *Haslip*, 499 U.S. 1, 23-24 (1991). The ratio in this case is 420 times the compensatory damages awarded. This factor would suggest that the punitive award is excessive. However, although a mathematical ratio may be relevant, it is not "the be-all and end-all in punitive damages analysis . . . ." *Shea* v. *Galaxie Lumber & Constr. Co., LTD*, 152 F.3d 729, 736 (7th Cir. 1998). Instead, "[p]erhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Id.*, quoting *Gore*, 517 U.S. at 575.

Finally, with respect to comparable cases, only a few cases are cited by the parties. Filipovich points to *TXO Prod. Corp*, a common law action for slander of title involving deliberate false statements, affirmative misconduct and attempts to conceal improper motives. The court does not view *TXO Prod. Corp.* as comparable. K & R points to a small sampling of cases, *see Ross* v. *Black & Decker, Inc.*, 977 F.2d 1178, 1189-90 (7th Cir. 1992) (punitive damages reduced from 5 to 2 times compensatory damages); *Cash* v. *Beltmann N. Am. Co., Inc.*, 900 F.2d 109 (7th Cir. 1990) (punitive damage award reduced from $137,409 to $75,000 even though compensatory damages were $250,000). Neither of these cases deals with federal employment law issues relevant to this case. On its own research, the court has found Title VII cases where the compensatory damages were relatively low but punitive damages are still awarded because of the defendants' reprehensible violations of federally secured rights. *See, e.g., Shea*, 152 F.3d at 736 (in sexual harassment case, $2,500 punitive award allowable despite only $1 dollar in compensatory damages); *Timm* v. *Progressive Steel Training, Inc.*, 137 F.3d 1008, 1010 (7th Cir. 1998) (in sexual harassment case, $15,000 dollar award allowable despite no compensatory damages); *see also, Ross*, 293 F.3d at 1049 (concluding that, in Title VII failure to promote case, $60,000 was constitutional maximum where compensatory damages totaled $6,000).

Although the jury had sufficient evidence to conclude that K & R's conduct was reprehensible, where K & R continues to employ Filipovich, where the punitive damage award is 420 times the compensatory damages, and where punitive damages awards in comparable cases do not approach what was granted here, and based on a weighing of all the factors, the punitive award in this case is constitutionally excessive and a reduction is necessary.

The next step for the court after this conclusion is to consider what the constitutional maximum for punitive damages would be in this case. Clearly both *Timm* and *Shea* establish that, despite low compensatory damages, at least $15,000 in punitive damages passes constitutional muster. The question becomes, based on the application of the *Gore* factors to this case, how much higher above this $15,000 award can the punitive amount reach without running into constitutional difficulties? In *Ross*, the Eighth Circuit found $60,000 acceptable under the facts of that case, albeit with a significantly higher amount of compensatory damages. 293 F.3d at 1049. The court believes the appropriate constitutional limit in this case is $25,000. While this amount is still a significant compensatory : punitive damages ratio of 1 : 83+, it is well within the 500 : 1 ratio that the Supreme Court hinted might be problematic and within the range of punitive damages in other employment discrimination cases involving low compensatory damage amounts. At the same time, it is sufficiently harsh to serve the dual purposes of punitive damages, to deter retaliatory conduct by others and to punish K & R for its actions.[8]

## CONCLUSION

For the reason stated above, the court grants in part and denies in part K & R's renewed motion for judgment as a matter of law [#92]. K & R's renewed motion for judgment as a matter of law on the retaliation claim is denied. K & R's renewed motion for judgment as a matter of law on the age discrimination claim is granted. K & R's renewed motion for judgment as a matter of law on the punitive damages award is denied. The court does, however, conclude

---

[8]Although the parties do not discuss K & R's net worth, it is plainly not a mega-corporation for which $25,000 would be mere pocket change.

30

that the punitive damage award is constitutionally excessive, and adjusts that amount to

$25,000.

ENTER:

JOAN HUMPHREY LEFKOW
United States District Judge

Dated: March 20, 2003